No. 23-13872-G

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
————————————

UNITED STATES OF AMERICA,
*Appellee,*
v.
MARCOS DAMIAN,
*Appellant.*

---

On appeal from the United States District Court
For the Northern District of Georgia
No. 1:17-cr-292-ELR-JKL

---

**BRIEF OF APPELLANT MARCOS DAMIAN**

---

Jay L. Strongwater
STRONGWATER & ASSOCS., LLC
3340 Peachtree Rd., Ste. 2570
Atlanta, GA 30326
(404) 872-1700

Lynsey M. Barron
BARRON LAW LLC
1800 Peachtree St. NE, Ste. 300
Atlanta, GA 30309
(404) 276-3261

*Counsel for Appellant Marcos Damian*

CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1-1 to 26.1-3, Appellant states that the following people and entities have an interest in the outcome of this appeal:

1. Abt, E. Jay, former counsel for Appellant

2. Anand, Hon. Justin S., U.S. Magistrate Court Judge

3. Barron, Lynsey M., counsel for Appellant

4. Baverman, Hon. Alan J., former U.S. Magistrate Court Judge

5. Bly, Hon. Christopher C., U.S. Magistrate Court

6. Brown, Michael J., former Assistant U.S. Attorney

7. Buchanan, Ryan K., U.S. Attorney

8. Damian, Marcos, Appellant

9. Erskine, Kurt R., former U.S. Attorney

10. Hartigan, Nicholas, former Assistant U.S. Attorney

11. Hathaway, Elizabeth, Assistant U.S. Attorney

12. Larkins, III, Hon. John K., U.S. Magistrate Court Judge

13. McBath, Hon. J. Elizabeth, U.S. Magistrate Court Judge

14. Morrison, William A., former counsel for Appellant

15. Nations, Radka T., former Assistant U.S. Attorney

C-1 of 1

16. Norton, Jr., Albert L., former counsel for Appellant

17. Ojeda, Rebeca, Assistant U.S. Attorney

18. Pak, Byung J., former U.S. Attorney

19. Ross, Hon. Eleanor L., U.S. District Court Judge

20. Salinas, Hon. Catherine M., U.S. Magistrate Court Judge

21. Sommerfeld, Lawrence R., Assistant U.S. Attorney

22. Stacy, Hon. Frances H., U.S. Magistrate Judge (S.D. Tex.)

23. Strongwater, Jay L., counsel for Appellant

24. Tarvin, Lisa, former Assistant U.S. Attorney

25. United States of America, Appellee

26. Villarreal, Gilbert, former counsel for Appellant

27. Walker, Hon. Linda T., U.S. Magistrate Court Judge

28. Washington, Sherri L., former counsel for Appellant

29. Webster, Leigh Ann, former counsel for Appellant

30. Wilmot, Trevor, former Assistant U.S. Attorney

No publicly traded companies have an interest in this Appeal. The Appellant is currently incarcerated.

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is necessary because this case involves a novel question of law.

### TABLE OF CONTENTS

Certificate of Interested Persons ........................................................... C-1 OF 1

Statement Regarding Oral Argument ........................................................ 1

Statement of Jurisdiction ........................................................................ v

Statement of the Issues ........................................................................... 1

Statement of the Case ............................................................................. 2

    I.     Facts Relevant to Speedy Trial Claim ............................................ 2

    II.    Plea and Sentencing ..................................................................... 6

    III.   Standard of Review ....................................................................... 11

Summary of the Argument ...................................................................... 12

Argument ................................................................................................ 13

    The District Court Should Have Dismissed the Indictment With
    Prejudice Because the Delays in this Case Violated Appellant's
    Sixth Amendment Right to a Speedy Trial ...................................... 13

    A.    The Length of Delay~Well Over Five Years~Favored
         Dismissal ................................................................................ 16

    B.    The Reasons for the Delay Weigh Heavily Against the
         Government Because Appellant Did Not Contribute to the Delay ..... 17

    C.    Appellant Asserted His Speedy Trial Rights, Which Favored
         Dismissal ................................................................................ 19

    D.    Because the First Three Factors Weigh Heavily in Appellant's Favor,
         This Court Need Not Determine Whether Appellant Was
         Prejudiced; Nonetheless, the Prejudice Here Was Substantial ........... 21

Conclusion ...................................................................................... 24

Certificate of Compliance ........................................................... 26

Certificate of Service .................................................................... 27

## TABLE OF AUTHORITIES

PAGE(S)

### Cases

*Barker v. Wingo,*
   407 U.S. 514 (1972) ................................................................ *passim*

*Doggett v. United States,*
   505 U.S. 645 (1992) .................................................................23, 24

*United States v. Dunn,*
   345 F.3d 1285 (11th Cir. 2003) ............................................... 16

*United States v. Ingram,*
   446 F.3d 1332 (11th Cir. 2006) ................................ 14, 16, 20, 21

*United States v. Oliva,*
   909 F.3d 1292 (11th Cir. 2018) ............................... 17, 18, 19

*United States v. Russo,*
   741 F.3d 1264 (11th Cir. 1984) .................................................19

*United States v. Villareal,*
   613 F.3d 1344 (11th Cir. 2010) ...................................... *passim*

### Statutes

21 U.S.C. § 841(b)(1)(A) ......................................................... 2
28 U.S.C. § 1291 .......................................................................... v

### Rules

Eleventh Circuit Rule 32-4 .......................................................26
Eleventh Circuit Rule 26.1 to 26.3 .....................................C1
Fed. R. App. P. 4(b)(1)(A)(i) ................................................. v
Fed. R. App. P. 26.1 ............................................................C1
Fed. R. App. P. 32 ...................................................................26

iv

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Appellant's appeal. On November 16, 2023, the district court entered final judgment, which disposed of all claims and was appealable under 28 U.S.C. § 1291. (*See* Case No. 1:17-cr-292-ELR-JKL, Dkt. 497.) Appellant filed a timely Notice of Appeal on November 20, 2023. (Dkt. 498); *see* FED. R. APP. P. 4(b)(1)(A)(i).

<u>STATEMENT OF THE ISSUE</u>

Did the district court err in denying Appellant's motion to dismiss for violation of his constitutional right to a speedy trial when he had been in pretrial custody for over five years at the time the motion to dismiss was filed and he did not contribute to the reasons for delay?

<u>S</u><small>TATEMENT OF THE</small> <u>C</u><small>ASE</small>

**I.** <u>Facts Relevant to Speedy Trial Claim</u>

Appellant Marcos Damian participated in a Mexico-based drug trafficking conspiracy. (PSR ¶ 11.) Although he was based in Houston, his role in the conspiracy involved handling the organization's business in Atlanta. (PSR ¶ 14(k).) In February 2017, Appellant was coordinating with the Mexican source to supply heroin to a distributor in Atlanta. (PSR ¶ 40.) The source instructed Appellant to check on a stash house worker, S.F., who was not responding to communications. (PSR ¶ 41.) After calling a locksmith to gain entry to the residence, Appellant saw that S.F. appeared to be dead; he left before the police arrived. (PSR ¶ 41-42.) An autopsy confirmed that S.F. died from an overdose of fentanyl and ethanol alcohol. (PSR ¶ 43.)

A grand jury sitting in the Northern District of Georgia indicted Appellant on August 23, 2017, charging him with participating in a conspiracy to distribute a host of drugs including the fentanyl that caused S.F.'s death. (Dkt. 1.) The U.S. Attorney's charging decision, and specifically the claim that the conspiracy caused S.F.'s death, triggered a 20-year mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A). Appellant was willing to take responsibility for his role in the drug trafficking conspiracy early on, but he would not admit that S.F.'s death was a result of that

conspiracy because there was insufficient evidence that the fentanyl S.F. consumed was part of the conspiracy. Indeed, that was the only issue Appellant ever disputed.[1]

Appellant did not file any pretrial motions, and this case was certified ready for trial as to him on March 13, 2018. (Dkt. 124.) It took over five more years for the case to resolve—through no fault of Appellant's. The bulk of the delay was because the magistrate judge originally assigned to this case took over three and a half years to resolve motions to suppress filed by Appellant's codefendant, Arturo Gonzalez-Renteria. On March 6, 2018, Mr. Gonzalez filed two motions to suppress evidence. (*See* Dkt. Sheet.)[2] The government filed a response brief on April 12, 2018, and Mr. Gonzalez filed a reply on May 21, 2018. (*See id.*) The magistrate judge did not order an evidentiary hearing until over two years later, which hearing occurred on

---

[1] The government did not hold anyone who pled guilty prior to Appellant responsible for S.F.'s death, so it was doubly unfair that Appellant alone would be held to the 20-year mandatory minimum. (11/15/23 Sent. Hr'g at 150-51.) But the government relentlessly rejected Appellant's efforts to resolve the case unless he admitted responsibility for S.F.'s death. As discussed *infra*, the district court sided with Appellant on this issue.

[2] Because the substantive motions and filings related to those motions do not bear on this appeal—only the timing of those filings—Appellant references the Docket Sheet rather than the individual filings and does not plan to include the individual filings in the Appendix. He will supplement his Appendix with those filings if this Court requests.

September 25, 2020.[3] (*See id.*) That judge ordered further briefing; the government filed its brief on October 27, 2020 and Mr. Gonzalez filed his brief on November 13, 2020. (*See id.*)

Another year went by with no movement. On December 7, 2021, Mr. Gonzalez moved to dismiss on statutory speedy trial grounds, which finally prompted the magistrate judge to rule on his motions to suppress. (*See id.*) On December 9, 2021—over three and a half years after Mr. Gonzalez filed his motions to suppress—the magistrate judge recommended that the motions be denied. (*See id.*) Mr. Gonzalez's motion to dismiss on speedy trial grounds was ultimately granted but he was reindicted. (*See id.*) After moving to adopt his pending motions to suppress in response to the new indictment, the district court denied those motions on November 29, 2022. (*See id.*) This was over four and half years after the motions were originally filed, over four years after Appellant was certified ready for trial, and over five years after Appellant was arrested. (*See id.*)

───────────────

[3] The record is unclear as to why it took so long for a suppression hearing to be set, given that briefing was concluded by May 21, 2018. The delay cannot not be blamed on the Covid-19 pandemic because the briefing was concluded almost two years before the pandemic began, and the hearing ultimately did occur while the Court's operations were still suspended due to the pandemic.

While those motions were pending and Appellant was represented by previous counsel, on November 25, 2019 he moved to dismiss the indictment with prejudice alleging a statutory speedy trial violation. (Dkt. 237.) The court denied his motion in large part because the pretrial motions filed by Mr. Gonzalez tolled the speedy trial clock. (Dkt. 301 at 4-11.)

Within 23 days of undersigned counsel being appointed to represent Appellant,[4] they renewed Appellant's effort to assert his constitutional and statutory rights to a speedy trial on August 31, 2022 and asked that the indictment be dismissed with prejudice. (Dkt. 384; *see also* Dkt. Sheet.) At the time the motion was filed, Appellant had been sitting in pretrial detention for five years. The government conceded that the statutory speedy trial had lapsed but disputed that Appellant's constitutional speedy trial right had been compromised, and it asked that the court dismiss the indictment without prejudice so it could reindict. (Dkt. 390.)

On January 19, 2023, the district court rejected Appellant's constitutional speedy trial in a substantively thin six-page order—only two pages of which discussed the constitutional speedy trial claim at the heart of this appeal. (*See* Dkt. 400 at 4-5.)

---

[4] This case took so long to resolve that there were eight different attorneys for Appellant; five different prosecutors; four different U.S. Attorneys; and three different magistrate judges.

5

It granted his statutory speedy trial motion as the law required, but it dismissed the indictment without prejudice. (*See id.* at 6.) The government subsequently filed a fourth indictment charging Appellant with the exact same counts as before. (Dkt. 405.)

## II.    Plea and Sentencing

After months of trying to negotiate a plea that would allow him to contest whether he should be held responsible for S.F.'s death, on June 29, 2023, Appellant entered a negotiated plea agreement wherein Appellant pled to one count of conspiracy to distribute drugs and one count of money laundering in furtherance of that conspiracy. (Dkt. 443-1.) Appellant conceded that S.F.'s death was caused by a fentanyl overdose but the plea agreement left open for sentencing the question of whether fentanyl was part of the conspiracy to which he pled. (Dkt. 443-1 ¶ 15.) Structuring the plea this way avoided the 20-year mandatory minimum and allowed the parties to make their respective arguments regarding S.F.'s death to the judge, who would decide whether it should factor into Appellant's punishment. The agreement also contained the U.S. Attorney's Office's standard appeal waiver, but it included an express exception that allows Appellant to appeal the issue raised here—whether the district court erred in denying his motion to dismiss for violation of his constitutional right to a speedy trial. (Dkt. 443-1 ¶ 28.)

The U.S. Probation Office prepared a Presentence Investigation Report ("PSR") recommending that Appellant be held responsible, for guideline purposes, for S.F.'s death. (PSR ¶ 59.) The government also sought an upward departure equivalent to four levels because it maintained its view that, even though it agreed to let Appellant enter a plea to the conspiracy without triggering the 20-year mandatory minimum, his sentence should still be enhanced due to S.F.'s death. (11/15/23 Sent. Hr'g at 139.) After hours of testimony and argument from the government—and without even needing to hear argument from defense counsel—the court agreed with Appellant that there was too tenuous a connection between the drug conspiracy Appellant agreed to join and S.F.'s death. (*See id.* at 152, 161.)

The PSR also recommended a two-level increase for playing an aggravating role because Appellant "had a courier delivering money for him." (PSR ¶ 68.) Appellant objected to the role enhancement but the court overruled the objection. (11/15/23 Sent. Hr'g at 161.)

Finally, the PSR recommended that Appellant get a three-level reduction for accepting responsibility. (PSR ¶¶ 72-73.) The government argued that Appellant should only get two levels off because it had engaged in significant trial preparations by the time the plea was entered. (11/15/23 Sent. Hr'g at 136-39.) Appellant argued that he had long been ready to plead to participating in a drug distribution conspiracy

7

but that the government had, until recently, consistently rejected any plea proposal unless he admitted responsibility for S.F.'s death. (*Id.* at 157-58.) Appellant was not trying to persuade the government to abandon its position regarding the death. As defense counsel argued at sentencing: "We knew they were always going to try and hold him accountable. We just wanted the right to argue the issue and let the court decide it." (*Id.* at 158.)

Rather than waiting until the eve of trial to change his plea, as the government had argued, Appellant had been ready *for years* to plead to the drug conspiracy but was hamstrung by the government's dogmatic position on S.F.'s death—a position the district court ultimately rejected anyway. (*Id.*; *see also id.* at 152, 161.) It was not until the week before he pled guilty—in June 2023—that the government finally agreed to at least leave that question up to the court. (*Id.*) Understanding that the government could not be forced to move for the third point for accepting responsibility, Appellant asked the court to award the point under the sentencing factors outlined at 18 U.S.C. § 3553(a) because of Appellant's "longtime willingness to come into this court and own what he did" and because "he accepted responsibility long ago and wanted his day in court. He just wanted not to be the only one who had to take responsibility for this death." (*Id.* at 158-59.)

The district court agreed with Appellant that he was not responsible for the delay in waiting until the week before trial to plead guilty and awarded him the extra point off his Guidelines calculations for accepting responsibility. (*Id.* at 162.) As it stated:

> When I consider all of the litigation that took place in this case and the amount of time that Mr. Damian was incarcerated before we could get this case scheduled for trial—and, of course, this case was with another judge before it came to me. And that judge was very busy, and I communicated with that judge many times about the lack of movement on this case. So we did what we could, but it took a long time.

(*Id.*) After calculating the total offense level, the district court determined Appellant's advisory Guidelines range to be 210 to 262 months' imprisonment. (*Id.* at 165.) The government sought a sentence of 240 months (20 years). (*Id.* at 180.) Appellant asked for 144 months (12 years). (*Id.* at 193.)

In support of his request for a 144-month sentence, Appellant called four character witnesses who were employees at the Robert A. Deyton Detention Center in Lovejoy, Georgia, where he had been incarcerated for the prior six years. (*Id.* at 166-174.) Each testified to Appellant's character and the leadership role he had played at the facility in not only keeping himself in line and on the right path, but also motivating other inmates to become better people as well. The correctional officers "witness[ed] an immediate change" in Appellant. (*Id.* at 167.) In his six years in pretrial custody, he never had a single disciplinary issue. (*Id.*) He earned the officers' trust, at

9

times helping to "defuse" situations by assisting officers in dealing with other detainees. (*Id.* at 168, 170.) He was instrumental in helping the officers "calm" down other detainees, "to show them the way that they need to be at the facility as time, take ownership. He's a great dude. I put all trust in him. I know if I need something done, he will get it done with no—no hesitation." (*Id.* at 174.) Appellant had proven himself to the officers "to be a very honest, a very disciplined young man that has pretty much changed his life around from what I guess it was." (*Id.* at 168-69.) Appellant's presence in the prison "throughout the whole facility in a sense, because he was recognized as someone that was good." (*Id.* at 170.)

The court was moved by hearing from the officers. It noted that it had "never, as a federal or state judge, never seen—never seen that happen" where correctional officers came to serve as character witnesses for an inmate. (*Id.* at 173.) "I do think it is—I don't even know the word—remarkable that this many people from Deyton have come to provide these statements. I've never seen anything like it. . . . What appeared to be very credible and strong men who have appeared in this court on behalf of you." (*Id.* at 204.) The court varied downward and sentenced Appellant to 180 months total (15 years). (*Id.* at 204; *see also* Dkt. 497.) At the time of his sentencing, Appellant had been in pretrial custody for over six years. (*See* PSR at p. 2.)

Appellant filed a timely Notice of Appeal on November 20, 2023. (Dkt. 498.)

10

**III.** <u>**Standard of Review**</u>

Claims that a defendant was denied his constitutional right to a speedy trial present mixed questions of law and fact. *See United States v. Villareal*, 613 F.3d 1344, 1349 (11th Cir. 2010). This Court will accept the district court's findings of fact for clear error and will review the district court's legal conclusions *de novo. Id.*

<u>SUMMARY OF THE ARGUMENT</u>

The parties heavily briefed the issue in this appeal below—whether Appellant's constitutional right to a speedy trial was violated. Rather than addressing the substance of those arguments, the district court denied Appellant's motion to dismiss in what was effectively a summary dismissal.

Fortunately, this Court's *de novo* review is unconstrained by the scant guidance offered in the district court's order. After taking a fresh look at the facts surrounding the extraordinary length of delay here in light of this Court's precedent, it is clear that a delay this long cannot be tolerated. Court dockets are no doubt full and judges must juggle a heavy caseload, but there is nothing particularly complex or unusual about the facts and issues in this case that warranted such a lengthy delay between indictment and Appellant finally having his day in court.

Reversal with orders to dismiss the indictment may be an unsatisfactory result, but it is the only result our constitution abides on these extraordinary facts.

<u>ARGUMENT</u>

**<u>The District Court Should Have Dismissed the Indictment With Prejudice Because the Delays in this Case Violated Appellant's Sixth Amendment Right to a Speedy Trial.</u>**

If ever a case lingered so long that it compromised a defendant's constitutional right to a speedy trial, this is it. Appellant served close to half of what would be his ultimate sentence in pretrial detention just waiting for the case to resolve. His Sixth Amendment right to a speedy trial was violated, and the only remedy is to reverse with instructions that the indictment be dismissed.

The constitutional right to a speedy trial "is a more vague concept than other procedural rights" in part because it is "impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Courts struggle to say "how long is too long in a system where justice is supposed to be fixed but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." *Id.*

In *Barker*, the Supreme Court set forth the criteria by which courts are to balance in evaluating constitutional speedy trial claims: (1) The length of the delay; (2) The reason for the delay; (3) Whether a defendant asserted his right to a speedy

trial; (4) Whether the defendant suffered prejudice. *Barker*, 407 U.S. 530-32; *see also United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010).

While there are four factors, courts should never reach the fourth factor—prejudice—if the first three factors weigh heavily in a defendant's favor. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). The personal impact alone of a lengthy period of pretrial detention "should prevail if the only countervailing considerations offered by the State are those connected with crowded dockets and prosecutorial case loads." *Barker*, 407 U.S. at 537 (White, J., concurring). Unless the government can articulate some extraordinary and "special circumstance" that outweighs "the inevitable personal prejudice resulting from the delay," then it is not even necessary to consider whether there has been any prejudice to the defendant's ability to prepare for trial. *Id.*

The district court's discussion of Appellant's constitutional speedy trial claim is difficult to review on appeal because it is so thin. Nonetheless, Appellant attempts here to parse out the court's findings of fact from its legal conclusions given the standard of review. *See id.* (explaining that findings of fact are reviewed for clear error and legal conclusions reviewed *de novo*).

Regarding the first and second *Barker* factors, the court improperly merged them together without even addressing the length of time and presumptive prejudice.

14

(*See* Dkt. 400 at 4.) It then dismissed both factors without analysis at all, other than to say that the reasons for delay, which included litigation of the codefendant's motion to suppress "as well as repeated extensions requested by Defendants . . . including ones related to Defendant Damian's pursuit of new counsel." (Dkt. 400 at 4.) Appellant's codefendants did indeed file multiple motions to extend time, but the record is absent of any request by Appellant for time to pursue new counsel, so the basis for this finding seems absent. As to the third factor, the court found that Appellant did assert his right to a speedy trial but the factor does not weigh heavily against the government since it did not seek a continuance or otherwise contribute to the delay. (*Id.* at 4-5.)

As to prejudice, the court rejected that the length of time in pretrial detention alone was insufficient because Appellant did not demonstrate that the "conditions under which he was held or the length of his confinement rendered the delay a constitutional violation."[5] (*Id.* at 5.) The Court also found that Appellant failed to explain how or why his defense was impaired. (*Id.*) It is ironic that the district court found that Appellant did not present any evidence to show prejudice since he

_____

[5] It is somewhat tautological for the court to conclude that, in essence, Appellant did not show that the length of time was excessive because he did not show that the length of time was excessive. This underscores how thin the findings of fact were and how difficult it is for this Court to review them even for clear error.

specifically asked for the opportunity to have an evidentiary hearing where he could present such evidence (*see* Dkt. 384 at 1, 16), but the district court failed to grant him that chance. Appellant will address each of the district court's conclusions below.

Because Appellant was denied his constitutional right to a speedy trial, this Court must vacate the conviction and sentence and dismiss the criminal indictment. *See Villareal*, 613 F.3d at 1349.

### A. The Length of Delay—Well Over Five Years—Favored Dismissal.

The length of the delay is a threshold issue requiring a defendant to show that the interval between indictment and trial "has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Villarreal*, 613 F.3d at 1350. The longer the delay, the stronger the presumption that the delay prejudiced the defendant. *Id.*

As a benchmark, the Eleventh Circuit considered a delay of two years—less than half the time Appellant waited for this case to resolve—presumptively prejudicial. *See id.* at 1350; *see also Ingram*, 446 F.3d at 1339 (11th Cir. 2006); *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (18-month delay is presumptively prejudicial). The Supreme Court has already held that a delay similar to that here—five years—was "extraordinary." *Barker*, 407 U.S. at 533-34. And unlike the defendants in *Barker* and *Villareal*, Appellant was not even released on bond.

16

The district court did not even address the extraordinary length of time Appellant spent in pretrial custody other than to assert that it does not weigh heavily against the government. It confounds explanation how the district court could have reached the conclusion that a delay longer than that in *Barker* and over twice that found to be presumptively prejudicial by this Court's caselaw could not weigh heavily against the government. The district court's conclusion is simply wrong under any measure, as this *Barker* factor is easily met.

**B. <u>The Reasons for the Delay Weigh Heavily Against the Government Because Appellant Did Not Contribute to the Delay.</u>**

The government bears the burden of establishing justifiable reasons for the delay. *Villarreal*, 613 F.3d at 1351. As with the entire *Barker* analysis, this factor is on a sliding scale where the government's intentional delay designed to prejudice the defendant weighs heavily against it; valid excuses at the other end of the scale, such as a missing witness, justify delay; and mere negligence, including overburdened courts or simple failure of the government to bring the case to trial in a timely manner, falls somewhere in between. *See United States v. Oliva*, 909 F.3d 1292, 1301-02 (11th Cir. 2018). But even where the reasons for the delay are "neutral" and not caused by bad faith, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. Where the defendant did not cause the delay, this factor should weigh towards him. *See id.*

17

The district court found that this factor does not weigh heavily against the government because the reasons for delay, specifically suppression motions filed by other defendants and requests for extension including Appellant's request for an extension so he could get new counsel, were explainable. (*See* Dkt. 400 at 4.) Under the district court's apparent reading of the law, as long as the delay is explainable, it is excusable.

But this factor can still weigh heavily against the government even when it did not cause the delay. *See Oliva*, 909 F.3d at 1301-02. This Court's "toleration of negligence varies inversely with the length of the delay that the negligence causes." *Id.* at 1302 (internation quotation marks and citation omitted). The longer the delay, the more heavily negligence will weigh heavily against the government. *Id.*

The delay in this case is attributable primarily to the time co-defendant Gonzalez-Renteria's pretrial motions lingered before the magistrate judge. As discussed above in the recitation of facts, the magistrate judge took over three and a half years to recommend that the motions be denied, which delay cannot be attributed to the Covid-19 pandemic. The district court took almost another year to adopt the magistrate judge's recommendations. Although not negligence by the government, there was certainly negligence by the court system . . . and Appellant paid the price.

Negligence weighs against the government, but the weight courts should afford that negligence is tethered to the length of delay; the longer the delay, the more heavily this factor weighs against the government. *See id.* at 1302. The many years Appellant had to wait just while the codefendant's pretrial motions were pending—over four and a half years total—would be grounds enough for this factor to weigh heavily in his favor even without any of the other delays. Even accepting that the delay was not due to the government's recalcitrance or attempt to gain a tactical advantage, "the mere lack of improper motive is not a sufficient excuse for the delay. Some affirmative justification must be demonstrated to warrant a dismissal without prejudice." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984).

The government must offer more than an explanation; it must offer a justification. *See id.* Because none exists, this factor will weigh heavily against it.

## C. <u>Appellant Asserted His Speedy Trial Rights, Which Favors Dismissal</u>.

The Supreme Court has soundly rejected the notion that a defendant must "demand" a speedy trial to assert his right to one. *Barker*, 407 U.S. at 528. He "has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Id.* at 527. Society, too, has an interest in timely trials, "and society's representatives [the government] are the ones who should

19

protect that interest." *Id.* The primary burden to ensure a speedy trial is on the courts and the prosecutors. *Id.* at 529.

Nonetheless, the fact that Appellant asserted his speedy trial rights "is entitled to strong evidentiary weight" in determining whether those rights were violated. *Id.* at 531-32. Here, Appellant first asserted that right roughly two years after he was indicted and almost four years before he was sentenced when he filed his first motion to dismiss on speedy trial grounds. (Dkt. 237.) The Eleventh Circuit has held that a previously-filed motion to dismiss an indictment qualifies as an assertion of the right to speedy trial. *See Ingram*, 446 F.3d at 1338. The presence of this fact "weigh[s] heavily against the Government." *Id.* at 1340.

The district court conceded that this fact weighs in Appellant's favor. (Dkt. 400 at 4-5.) However, the court concluded that the factor did not weigh heavily against the government because it did not contribute to the delay. (*Id.*) The district court effectively conflated factors two and three, returning to the question of who was responsible for the delay. For this factor, the only question is whether the right was asserted, and unquestionably it was. *See Ingram*, 446 F.3d at 1338. Indeed, Appellant asserted the right twice, with the first time being over three years before the district court set a date for trial. (*Compare* Dkt. 237 *with* Dkt. 415.) This factor weighs heavily against the government.

### D. Because the First Three Factors Weigh Heavily in Appellant's Favor, This Court Need Not Determine Whether Appellant Was Prejudiced; Nonetheless, the Prejudice Here Was Substantial.

The first three factors weigh heavily in Appellant's favor, so this Court should reverse without even reaching the question of whether he suffered actual prejudice. *See Ingram*, 446 F.3d at 1336. Should this Court consider the weight of prejudice, *Barker* again provides the framework: The degree to which a defendant has been prejudiced by a lengthy delay "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. Those interests are: (1) To prevent oppressive pretrial incarceration; (2) To minimize the defendant's anxiety and concerns; and (3) to limit the possibility that the defense will be impaired. *Id.* The personal impact alone of a lengthy period of pretrial detention "should prevail if the only countervailing considerations offered by the State are those connected with crowded dockets and prosecutorial case loads." *Id.* at 537 (White, J., concurring).

And that prejudice is particularly magnified when a defendant is denied bond. "Lengthy exposure to these conditions has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." *Id.* at 520 (internal quotation marks and citation omitted). The loss of his job, the disruption to his family life, the idleness imposed on him—this has a "detrimental

impact" on a defendant because it is all "dead time." *Id.* at 532-33. Imposing the consequences of a lengthy pretrial incarceration "on anyone who has not yet been convicted is serious." *Id.* at 533.

Because Appellant was incarcerated during the delay—unlike the defendants in *Barker* and *Villareal*—the prejudice here was palpable. Although he is presumed innocent under the law, he was effectively punished without due process of law because he was denied many benefits afforded convicted federal inmates, such as meaningful work, education, and self-improvement opportunities. He did not see his young children or his wife for over five years, even though he made phone contact with them almost daily. He was cut off from his vast support network in Texas and all the people who were needed help him restore his life. While pretrial detention is not considered punishment, for him it was, and he suffered the exact form of prejudice with which the *Barker* Court was concerned.

Indeed, the oppressive conditions of pretrial custody Appellant endured were far beyond those contemplated by the *Barker* Court because no one could have predicted the impact a global pandemic would have on incarceration and how much more oppressive the pandemic would make incarceration. Like many pretrial detention facilities, the Robert A. Deyton Detention facility where Appellant was housed went on complete lockdown several times during the pandemic, forcing

22

detainees into isolation and quarantine for extended lengths of time. Appellant was under complete quarantine at least five times. And due to health concerns, detainees were denied visitation for years. Appellant requested an opportunity to present evidence and develop a record on the impact pretrial incarceration had on him while he waited for trial, but the district court denied him that chance. (*See* Dkts. 384, 400.)

As to proof that Appellant's defense was impaired by the delay, the Supreme Court set a very low threshold. In *Doggett v. United States*, the Court reversed the Eleventh Circuit, which had affirmed the denial of a defendant's motion to dismiss on constitutional speedy trial grounds because the defendant had not shown actual prejudice and because the length of the delay was due to negligence rather than bad faith. 505 U.S. 647, 651 (1992). The government argued that the defendant could not make any affirmative showing that the length of the delay affected his ability to raise defenses, elicit testimony, or produce evidence. *Id.* at 655.

The Supreme Court agreed that the defendant fell short in that regard, but it nonetheless stressed that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id*. Underscoring its prior decision in *Barker*, the Court noted that the impairment of a defense is "the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be

23

shown.'" *Id.* (quoting *Barker*, 407 U.S. at 532). Defense witnesses may be less able to recall relevant events with the passage of time, and this loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407 U.S. at 532. And where a defendant is denied bond, he is severely limited in the ability to assist in his defense by gathering evidence, contacting witnesses, and otherwise assisting his attorney. *Id.* at 533.

Courts must therefore presume that an excessive period of delay will prejudice the defense in a way the defendant cannot prove or even identify. *Id.* And the presumptive prejudice "increases with the length of delay." *Doggett*, 505 U.S. at 656. The government's negligence is not as intolerable as a bad-faith delay, but neither is it "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657. But the district court completely ignored the Court's clear directive in weighing prejudice for a delay this long.

## Conclusion

Where the right to a speedy trial has been deprived, as it unquestionably was here, dismissal *with prejudice* was required. *See Barker*, 407 U.S. at 522. While it may seem an "unsatisfactorily severe remedy" to the extent that it contemplates that guilty defendants go free, "it is the only possible remedy" under our Constitution. *Id.* This

Court should reverse Appellant's conviction with instructions that the district court dismiss the indictment against him with prejudice.

Respectfully submitted,

**_s/ Lynsey M. Barron_**
Lynsey M. Barron

*Attorney for Appellant Marcos Damian*

<u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable type-volume limitation under Rule 32(a)(7) of the Federal Rules of Appellate Procedure and 11th Circuit Rule 32-4. According to the word count in Microsoft Word 2010, the relevant parts of this brief contain 5,453 words. This brief complies with the applicable type-style requirements limitation under Rule 32 of the Federal Rules of Appellate Procedure. I prepared this brief in a proportionally spaced Goudy Old Style 14-point font or, for headings, with a larger point size.

*s/ Lynsey M. Barron*
Lynsey M. Barron

*Attorney for Appellant Marcos Damian*

### CERTIFICATE OF SERVICE

On April 17, 2024, I e-filed this brief with the Court via CM-ECF, which will serve all attorneys of record. On the same day, I mailed four copies to the Court via First Class United States Mail, postage prepaid.

s/ *Lynsey M. Barron*
*Lynsey M. Barron*

*Attorney for Appellant Marcos Damian*